IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STOUT STREET FUNDING LLC | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 10-5634 |
| OTIS JOHNSON *a/k/a OTIS JOHNSON-* | : | |
| *DAVENPORT*, ET AL. | : | |

SURRICK, J.                                                    JUNE  1 , 2012

## <u>MEMORANDUM</u>

Presently before the Court are Defendant Title Resources Guaranty Company's Motion to

Dismiss (ECF No. 28), Plaintiff Stout Street Funding LLC's Motion for Default Judgment (ECF

No. 60), and Defendants Otis Johnson, Mabstract, LLC, and Mabstract Management, LLC's

Petition to Set Aside Entry of Default and Seeking Leave to File Answer (ECF No. 64).  For the

following reasons, Title Resources Guaranty Company's Motion will be granted in part and

denied in part, Stout Street Funding's Motion will be denied, and Otis Johnson, Mabstract, and

Mabstract Management's Petition will be denied.

## I.    BACKGROUND

This lawsuit arises from an alleged fraudulent real estate transaction in which Plaintiff

Stout Street Funding lost $480,000.  Plaintiff brings this action against a number of individuals

and entities involved in the transaction.  Defendants include Otis Johnson, Mabstract, Mabstract

Management, Dorian Mitchell, John Glenn, Jr., doing business as International Small Business

Network ("ISBN"),[1] Shannen Kurz, Hassan Shaheed, International Construction Specialists,

---

[1] On August 17, 2011, Glenn filed a *pro se* petition for Chapter 13 bankruptcy.  *In re Glenn*, No. 11-16483 (Bankr. E.D. Pa. filed Aug. 17, 2011).  On September 20, 2011, Glenn's bankruptcy case was dismissed for abuse.  (ECF No. 89.)

Michael and Karen Meehan, Title Resources Guaranty Company ("TRGC"), Ebert Estrada, Bank of America/Countrywide Mortgage, John and Darlene Weller, JP Morgan Chase and Company, AMJ Hoagie House, and K&R Marketing Solutions.[2]  The allegations in the Complaint are as follows.[3]

Plaintiff provides commercial loans to real estate investors.  Glenn, as a principal of ISBN, submitted a loan application to Plaintiff for the purpose of purchasing a residential property located at 818 Waverly Road, Bryn Mawr, Pennsylvania.  (Compl. ¶ 45 & Ex. 1, ECF No. 1.)  On June 28, 2010, Plaintiff advised ISBN that it was willing to provide a $480,000 loan, subject to the receipt of certain documents, including a title insurance policy and a closing protection letter.  (*Id.* at ¶¶ 52-53.)

Defendant Mabstract provides title insurance, conducts title searches, and offers closing services in connection with real estate transactions.  Defendants Johnson and Mitchell each have a fifty percent interest in Mabstract.  (*Id.* at ¶ 16.)  Mabstract Management is an alter ego of Johnson and Mabstract.  (*Id.* at ¶ 12.)  Plaintiff alleges that Mabstract, while serving as an agent of TRGC, provided Plaintiff with a TRGC title commitment to issue an ALTA Loan Policy for the 818 Waverly Road transaction.  (*Id.* at ¶ 54.)  Mabstract also agreed to issue a closing protection letter on behalf of TRGC.  (Compl. ¶ 57.)[4]  On July 9, 2010, Mabstract provided

---

[2] Plaintiff voluntarily dismissed without prejudice its claims against K&R Marketing Solutions pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  (ECF No. 76.)

[3] In reviewing a motion to dismiss, courts may consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).

[4] A closing protection letter provides assurance to a lender that the closing agent will hold trust funds in escrow and make appropriate distributions.  (Compl. ¶ 58.)

Plaintiff with an escrow agreement.  (Compl. ¶ 64 & Ex. 7.)  On July 16, 2010, Plaintiff transmitted $480,000 into a Bank of America escrow account held by Mabstract.  (*Id.* at ¶ 65.) The money in the escrow account was to be used exclusively for the 818 Waverly Road transaction and distributed in accordance with Plaintiff's instructions and the HUD-1 settlement statement.  (*Id.* at ¶ 71.)

On July 19, 2010, Mabstract and Johnson conducted a closing of the real estate transaction.  The HUD-1 settlement statement was signed by Shannen Kurz, a principal of ISBN; Michael and Karen Meehan, owners of the 818 Waverly Road property; and Johnson.  (*Id.* at ¶ 78 & Ex. 11.)  During the closing, or shortly thereafter, Mabstract misappropriated the escrow funds deposited by Plaintiff and used this money to pay off debts arising from previous transactions. (*Id.* at ¶ 83.)  Specifically, Mabstract used the loan proceeds to pay $191,691.53 to Bank of America/Countrywide on account of a loan held by Ebert Estrada, $119,331.03 to JP Morgan Chase on account of a loan held by John and Darlene Weller, $24,000 to AMJ Hoagie Hut, and $14,400 to K&R Marketing.  (*Id.* at ¶ 84.)  Plaintiff alleges that the entire 818 Waverly Road transaction was fraudulent.

After providing this background to the transaction in the Complaint, Plaintiff discusses the relationship between Mabstract and TRGC.  On April 8, 2010, TRGC and Mabstract entered into an Issuing Agency Contract, pursuant to which Mabstract would serve as a title insurance agent.  (*Id.* at ¶ 96 & Ex. 13.)  In relevant part, the Issuing Agency Contract provides that the "Principal appoints Agent as its agent solely for the purpose of issuing on Principal's forms, title insurance commitments, binders, guarantees, policies, and endorsements."  (*Id.* at Ex. 13 at ¶ 1.) Notwithstanding any other provision, Mabstract's "authority under this Agreement is expressly

3

limited to the issuance of Policies and the collection of premiums as set forth herein." (*Id.* at ¶ 2.) Mabstract was not authorized to "[r]eceive in the name of Principal any funds or things of value, including escrow and settlement funds, except premiums." (*Id.* at ¶ 2(I).) Under the "Duties of Agent" section of the Contract, Mabstract is instructed to "[k]eep all funds received by Agent from any source in connection with transactions in which Principal's title insurance is involved in a federally insured financial institution in escrow accounts." (*Id.* at ¶ 3(F).) Moreover, Plaintiff shall "[c]onduct or participate in any settlements or closings of title insurance transactions in which Policies of Principal are to be issued in an ethical manner." (*Id.* at ¶ 3(K).) The Issuing Agency Contract provides that Mabstract shall be liable to TRGC for expenses incurred by TRGC arising from the "handling of any escrow, sub-escrow or the closing of any transaction." (*Id.* at ¶ 6(A).)

TRGC discovered irregularities in real estate transactions involving Mabstract. (Compl. ¶ 109.) On July 12, 2010, TRGC terminated its Contract with Mabstract. (*Id.*) That day, representatives of TRGC went to Mabstract's offices to review its records and remove certain files. On July 14, TRGC filed a motion for a temporary restraining order and preliminary injunction against Johnson, Mitchell and Mabstract. *Title Res. Guar. Co. v. Mabstract LLC*, No. 10-3468 (E.D. Pa. filed July 14, 2010). On July 15, after a hearing, the Honorable Stewart Dalzell issued an order temporarily enjoining Defendants from "engaging or holding themselves out as engaging in any activity or business on behalf of TRGC." *Id.* at ECF No. 7.

On October 26, 2010, Plaintiff commenced the instant litigation. Plaintiff's Complaint alleges Fraud/Intentional Misrepresentation (Count I), Conspiracy (Count II), Conversion (Count III), Unjust Enrichment (Counts IV, XI, XIII), Breach of Fiduciary Duty (Count V), Negligence

4

(Counts VI, VIII), Piercing of the Corporate Veil (Count VII), Enabler Liability (Count IX),

Vicarious Liability/Respondeat Superior (Count X), Fraudulent Transfers (Count XII), Nominal

Relief (Count XIV), and Breach of Contract (Count XV).  On December 6, 2010, TRGC

responded with a Motion to Dismiss.  (Mot. Dismiss, ECF No. 28.)  On January 21, 2011,

Plaintiff filed a Motion for Default Judgment as to Defendants Johnson, Mabstract, Mabstract

Management, Glenn, Kurz, Michael Meehan and AMJ Hoagie House.  (Mot. Default, ECF No.

60.)  On February 1, 2011, Johnson, Mabstract, and Mabstract Management filed a Petition to Set

Aside Default.  (Pet. Set Aside, ECF No. 64.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain

statement of the claim showing that the pleader is entitled to relief."  Federal Rule of Civil

Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon

which relief can be granted."  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts

that show entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211

(3d Cir. 2009).  This "'does not impose a probability requirement at the pleading stage,' but

instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal

evidence of' the necessary elements."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir.

2008) (quoting *Twombly*, 550 U.S. at 556).

Federal Rule of Civil Procedure 55(b)(2) authorizes the entry of a default judgment upon

application to the court by a party.  In determining whether to grant a default judgment, courts examine three factors:  1) prejudice to the plaintiff if default is denied; 2) whether the defendant appears to have a litigable defense; and 3) whether the defendant's delay is due to culpable conduct.  *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).  "[T]he factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citations omitted).

## III.    DISCUSSION

### A.    TRGC's Motion to Dismiss

Plaintiff brings four claims against TRGC.  These claims include negligence (Count VIII), enabler liability (Count IX), vicarious liability (Count X) and unjust enrichment (Count XI).

#### 1.    *Closing Protection Letters*

TRGC argues that all of Plaintiff's claims fail because TRGC never issued a closing protection letter.  A closing protection letter is provided by a title insurance underwriter, such as TRGC, to "verify the agent's authority to issue the underwriter's policies and to make the financial resources of the national title insurance underwriter available to indemnify lenders and purchasers for the local agent's errors or dishonesty with escrow or closing funds."  *New Freedom Mortg. Corp. v. Globe Mortg. Corp.*, 761 N.W.2d 832, 842 (Mich. Ct. App. 2008) (quoting 2 Palomar, Title Ins. Law § 20:11).  Closing protection letters have seldom been the subject of litigation in the Third Circuit or Pennsylvania.  Accordingly, we look to other courts for guidance.

Insurance industry practice "generally requires" the issuance of a closing protection letter

"before title insurance companies can be liable for the actions of their independent title insurance agents when those agents are conducting closings." *Bergin Fin., Inc. v. First Am. Title Co.*, 397 F. App'x 119, 125 (6th Cir. 2010); *see First Am. Title Ins. Co. v. First Alliance Title, Inc.*, 718 F. Supp. 2d 669, 680 (E.D. Va. 2010) ("[C]losing protection letters function to protect lenders when settlement agents engage in fraud or other misconduct, and are issued precisely because the lender cannot typically hold a title insurer liable in their absence."); *Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724, 738 (D. Md. 2008); *Resolution Trust Corp. v. Am. Title Ins. Co.*, 901 F. Supp. 1122, 1124 (M.D. La. 1995); *see also* James Bruce Davis, *The Law of Closing Protection Letters*, 36 Tort & Ins. L.J. 845, 847 (2011) ("A substantial majority of courts hold that if a title insurance company has not issued a closing protection letter, the title insurer has no liability for fraud or other misconduct by a settlement agent in connection with a real estate closing."). Lenders request these letters as an additional source of protection because agents who are authorized to issue policies are often not authorized to conduct closings on behalf of the title insurance company. *See Bergin*, 397 F. App'x at 125.

TRGC extracts from these cases a strict rule in which a title insurance underwriter can never be liable for an agent's defalcations at closing if no closing protection letter was issued. We disagree with this reading. A closing protection letter is ordinarily, but not exclusively, the means by which underwriter liability may be imposed. Courts also may inquire into the scope of the principal-agent relationship to determine whether the agent acted with actual or apparent authority to close the transaction on behalf of the principal. *Nat'l Mortg. Warehouse, LLC v. Bankers First Mortg. Co.*, 190 F. Supp. 2d 774, 779 (D. Md. 2002) ("[L]ike other courts called upon to determine the authority of an issuing agent where no valid closing protection letter

exists, the court will examine the Agency Agreement between Security Title and Title Express to define the scope of Trikeriotis's authority."); *Bergin Fin.*, 397 F. App'x at 125, 127 (engaging in apparent agency analysis after finding no closing protection letter); *Proctor*, 579 F. Supp. 2d at 738 n.23 (noting that absent applicable closing protection letter, court could find liability if the agent was acting under apparent authority from the principal); *Resolution Trust*, 901 F. Supp. at 1124.  The issuance of a closing protection letter demonstrates the need for additional protection for the lender because of the general absence of agency liability.  *Proctor*, 579 F. Supp. 2d at 738.  If, however, there is evidence that the agent's acts at closing were intended to bind the principal, no letter is necessary to impute liability.  Accordingly, we reject TRGC's argument.

### 2. Actual and Apparent Authority

TRGC contends that it cannot be liable for Mabstract's malfeasance because Mabstract did not have actual or apparent authority to serve as TRGC's closing agent.  Pennsylvania law recognizes both actual and apparent agency.  *See Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505, 511 (E.D. Pa. 2009).  Actual authority may be express or implied. *Richardson v. John F. Kennedy Mem'l Hosp.*, 838 F. Supp. 979, 985 (E.D. Pa. 1993).  Express actual authority is that which has been expressly granted to an agent by his principal.  Implied actual authority is that which is necessary, proper, and usual in the exercise of the agent's express authority.  *Volunteer Fire Co. of New Buffalo v. Hilltop Oil Co.*, 602 A.2d 1348, 1352 (Pa. Super. Ct. 1992).  Apparent authority is "the power to bind the principal where the principal has not actually granted authority but which he leads persons with whom his agent deals to believe that he has granted."  *Reading Co. v. Dredge Del. Valley*, 468 F.2d 1161, 1163 (3d Cir. 1972).  A court may only find apparent authority if it is reasonable for the third party to believe that the

agent is authorized in its actions. *Fields v. Horizon House, Inc.*, No. 86-4343, 1987 WL 26652, at *4 (E.D. Pa. Dec. 9, 1987).

Plaintiff argues that Mabstract had actual and apparent authority to act as a closing agent for TRGC. It is clear from the face of the pleadings, however, that Mabstract did not have actual authority to perform services on behalf of TRGC at the time of the 818 Waverly Road closing. The closing occurred on July 19, 2010. Plaintiff concedes that TRGC terminated its contract with Mabstract on July 12. (Compl. ¶ 109.) Moreover, on July 15, TRGC obtained an injunction barring Mabstract from engaging in any business on behalf of TRGC. Plaintiff identifies no authority, and we are aware of none, that supports the argument that an agent may act with actual authority after the principal has expressly terminated its relationship with the agent and has secured an injunction prohibiting the agent from engaging in business on behalf of the principal.

Termination of actual authority, however, does not terminate an agent's apparent authority. "Once apparent authority has been created, it does not terminate until the third person has reason to know that the principal has revoked the authority, or that the agent has renounced it, or that such time has elapsed or such events have happened after the authorization as to require the reasonable inference that the agent's authority has terminated." *Reading Co.*, 468 F.2d at 1163; *see D & G Equip. Co. v. First Nat'l Bank of Greencastle, Pa.*, 764 F.2d 950, 955 (3d Cir. 1985); Restatement (Third) of Agency § 3.11 (2006) ("Apparent authority ends when it is no longer reasonable for the third party with whom an agent deals to believe that the agent continues to act with actual authority.").

Plaintiff argues that it reasonably believed that Mabstract continued to have actual authority at the time of the closing. Plaintiff contends that prior to Mabstract's termination, it

9

had actual authority to conduct escrow and closing services on behalf of TRGC.  In determining

whether a title insurance agent had actual authority, courts generally look to the express terms of

the issuing agency contract.  *Fid. Nat'l Title Ins. Co. v. Mussman*, 930 N.E.2d 1160, 1164-69

(Ind. Ct. App. 2010) (summarizing cases).  Plaintiff argues that the Issuing Agency Contract's

references to Mabstract's required conduct at settlements and closings, as well as its directives

relating to the handling of escrow funds, support its position that Mabstract served as a closing

agent.  In addition, Plaintiff directs us to the July 14, 2010 litigation filed by TRGC against

Mabstract.  In that action, TRGC alleged that "[o]n or about April 8, 2010, TRGC and Mabstract

entered into a Issuing Agency Contract, whereby TRGC appointed Mabstract to serve as its title

insurance agent for real estate closing transactions."  Am. Verified Compl. at ¶ 25, *Title Res.*

*Guar.*, at ECF No. 14.  In taking this position, TRGC relied on the same Issuing Agency Contract

between TRGC and Mabstract, dated April 8, 2010, that is at issue in this case.  TRGC argued

that Mabstract was its closing agent by referencing explicit language in the Contract, citing the

same provisions that Plaintiff relies on here.  Moreover, TRGC alleged that since "becoming a

TRGC agent in April 2010, Mabstract has closed at least seven (7) transactions where he has or

intended to issue TRGC title insurance policies."  *Id.* at ¶ 31.  Plaintiff argues that TRGC's

arguments are irreconcilable—in the earlier case, it contended that Mabstract served as a closing

agent, and in this case, it disclaims any such authority.

TRGC argues that the Issuing Agency Contract does not authorize Mabstract to serve as

its closing agent.  TRGC points to the provision that reads, "Principal appoints Agent as its agent

solely for the purpose of issuing on Principal's forms, title insurance commitments, binders,

guarantees, policies, and endorsements."  (Compl. Ex. 13 at ¶ 1.)  It argues that this contractual

10

limitation, which defines the scope of the principal-agent relationship, does not include closing

or escrow services.  TRGC maintains that the references to closing and escrow services in the

Issuing Agency Contract are meant to limit TRGC's exposure and do not broaden the explicit

grant of authority.  *See Fid. Nat'l*, 930 N.E.2d at 1168-69.  Moreover, TRGC attempts to

harmonize its ostensibly inconsistent arguments in the two litigations by contending that

Mabstract only had authority to serve as TRGC's closing agent when a closing protection letter

was issued.  None was issued here.

We conclude that it would be premature to make a determination as to the scope of the

principal-agent relationship prior to discovery.  The cases relied upon by the parties had

developed factual records.  *See, e.g.*, *Fid. Nat'l*, 930 N.E.2d at 1168 (granting summary judgment

where no evidence supports actual or apparent authority to conduct closing and escrow services);

*Bergin*, 397 F. App'x at 124, 127 (same); *Pal Props. LLC v. Ticor Title Ins. Co.*, No. 280389,

2008 WL 5158894, at *4-10 (Mich. Ct. App. Dec. 9, 2008) (same).[5]  In these cases, the courts

looked to the evidence of record to determine whether the agent had actual or apparent authority

to conduct closings.  The factual nature of this inquiry includes an evaluation of the issuing

agency contract, whether the third party was aware of the terms of the contract, whether the agent

has conducted closing and escrow services on behalf of the principal, and whether there were

---

[5] The only exception is *Proctor*, in which a court granted a motion to dismiss where the plaintiffs failed to allege that the agent had actual or apparent authority to close transactions.  *See* 579 F. Supp. 2d at 737-38 & n.23.  The court rejected the apparent agency claim because the plaintiffs did not allege that they "had any contact with the title insurers or otherwise relied on any representation by them."  *Id.* at 738 n.23.  By contrast, Plaintiff alleges that it received a TRGC title commitment from Mabstract and that Mabstract had actual authority under the Issuing Agency Contract to close transactions on behalf of TRGC until its termination, which was immediately prior to the closing.  Plaintiff is entitled to discovery on the issue of apparent agency.

11

assurances, conduct or communication by the principal that the third party could have reasonably relied upon to believe there was an agency relationship.

Plaintiff must be afforded an opportunity to present evidence that supports its argument that TRGC consented to Mabstract conducting closings and escrow services on its behalf. Plaintiff sufficiently alleges that it had no actual notice of Mabstract's termination and that there were no red flags that would have placed Plaintiff on inquiry notice. *See Johnson v. Nationwide Gen. Ins. Co.*, 971 F. Supp. 725, 731 (N.D.N.Y. 1997) ("[Apparent authority] lasts until a third party has actual notice of an agent's termination or until the third party has enough information to put that individual on inquiry."). Moreover, Plaintiff alleges that TRGC failed to take appropriate affirmative steps to prevent Mabstract from continuing to commit fraud against third parties. (Compl. ¶ 124.) At this stage of the litigation, we cannot, as TRGC would have it, make findings of fact.[6] TRGC's Motion to Dismiss Plaintiff's enabler liability claim (Count IX) and vicarious liability/respondeat superior claim (Count X) are based on TRGC's argument that Mabstract did not have actual or apparent authority at the time of the misappropriation. Since we reject TRGC's argument as to apparent authority, we must deny its Motion as to Counts IX and X of the Complaint.[7]

---

[6] TRGC argues that it did everything in its power to remove any indicia of authority maintained by Mabstract as its agent. (TRGC Reply 11, ECF No. 51.) In support of this position, TRGC notes that it terminated Mabstract's Issuing Agency Contract and it secured injunctive relief. Whether these steps were sufficient remains to be seen. We cannot rule on disputed factual issues such as notice on a motion to dismiss.

[7] TRGC briefly maintains that Plaintiff's vicarious liability/respondeat superior claim fails because Plaintiff never alleges that Mabstract was an employee of TRGC. This position is belied by the entire body of agency law, in which vicarious liability is a fundamental attribute, regardless of whether the individual is an employee. *See, e.g.*, Restatement (Third) of Agency § 7.03 (outlining principal's liability).

### 3.    Negligence

Plaintiff alleges in Count VIII that TRGC was negligent in hiring Mabstract as its title agent because it should have known that Mabstract had a history of misappropriating money. (Compl. ¶¶ 199-206.)  Plaintiff also alleges that TRGC provided no training, supervision or control over the operations of Mabstract.  (*Id.* at ¶ 208.)

TRGC argues that this claim must be dismissed because there can be no cause of action for negligent hiring and supervision if the tort is committed after the employment relationship is terminated.  *See Hutchinson ex rel. Hutchinson v. Luddy*, 742 A.2d 1052, 1059 (Pa. 1999) (suggesting that terminating an individual's employment shields an employer from liability in a negligent hiring and retention case); *Phillips v. TLC Plumbing, Inc.*, 91 Cal. Rptr. 3d 864, 872 (Cal. Ct. App. 2009) (finding that the "great weight of case authority" does not recognize negligent hiring claims for harm inflicted by former employee); *Coleman & Co. Sec., Inc. v. Giaquinto Family Trust*, 236 F. Supp. 2d 288, 304 (S.D.N.Y. 2002) (barring negligent supervision claim after employment ended); *Rehm v. Lenz*, 547 N.W.2d 560, 567 (S.D. 1996) ("It is illogical to contend West River negligently supervised or retained Lenz after Lenz left its employment; once Lenz left West River had no right to supervise or direct Lenz.").

In its Response, Plaintiff argues that the tortious conduct in this case started before Mabstract's termination.  Prior to July 12, 2010, the date on which Mabstract was terminated as an agent of TRGC, Mabstract provided Plaintiff with a title commitment and an escrow agreement, and promised to issue a closing protection letter.  (Compl. ¶¶ 54, 57, 64.)  However, Plaintiff did not transmit any money in connection with the transaction until July 16.  (*Id.* at ¶ 65.)  Plaintiff alleges that this money was misappropriated on July 19.  (*Id.* at ¶ 83.)  In its Sur-

Reply, Plaintiff appears to agree with TRGC that the tort was committed after Mabstract's termination.  (*See* Pl.'s Sur-Reply 11 ("There was no substantial delay between the date of termination and when the tort was committed here."), ECF No. 87.)

Notwithstanding this concession, Plaintiff argues that the close proximity between the termination date and the misappropriation date distinguishes these facts from the cases relied upon by TRGC.  *See, e.g.*, *Phillips*, 91 Cal. Rptr. 3d at 870 (denying negligent supervision claim where tort committed two years after employment ended).  Plaintiff also argues that the termination of actual authority does not by itself sever a principal's liability.  Plaintiff contends that in our application of the Restatement (Third) of Agency § 7.05, which deals with negligent supervision claims, we should be guided by the vicarious liability precept that generally controls the principal-agent relationship.[8]

We agree with TRGC that Plaintiff's negligent supervision claim must be dismissed. Plaintiff has not identified a single authority that deviates from the black-letter law developed in the cases cited by TRGC.  Although it was only a matter of days between the termination and the commission of the tort, courts have uniformly held that an employer cannot be liable under a negligent supervision theory for torts committed by a former employee after the relationship ended.  Plaintiff conflates the negligent supervision provision of the Restatement with those relating to vicarious liability.  A claim for negligent supervision is a claim for direct liability,

---

[8] The Restatement (Third) of Agency § 7.05 provides:

A principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent.

rather than vicarious liability under a respondeat superior theory.  The case law and the

Restatement are unequivocal in that they hold that principals may be vicariously liable for the

acts of their agents after the principal-agent relationship terminates.  *See, e.g.*, *Reading Co.*, 468

F.2d at 1163.  This is not so for a negligent supervision claim.  Once an employee or agent is

terminated, the employer or principal is no longer capable of negligently selecting, training,

retaining or supervising that individual; the end of the relationship must cut off liability.  Plaintiff

has not directed our attention to a single case that indicates otherwise.  Mabstract

misappropriated the funds after its Contract with TRGC terminated.  Plaintiff admits as much.

(*See* Pl.'s Sur-Reply 11.)  This is fatal to the negligent supervision claim.  Accordingly, that

claim must be dismissed.

### 4.      Unjust Enrichment

In Count XI, Plaintiff asserts an unjust enrichment claim against TRGC.  This claim

arises out of the following facts.  Mabstract issued TRGC title insurance commitments in the

Weller and Estrada real estate transactions and received money in escrow.  (Compl. ¶¶ 229, 235.)

Mabstract misappropriated this money and failed to pay off the Weller and Estrada mortgages at

closing.  The pay off amounts due on the Weller and Estrada transactions are $119,227.79 and

$191,474.26, respectively.  (*Id.* at ¶¶ 230, 236.)  Plaintiff alleges that TRGC was exposed to

liability in connection with these two transactions.  However, Mabstract misappropriated the

funds that it received from the 818 Waverly Road closing and used them to pay off the Weller

and Estrada mortgages.  (*Id.* at ¶¶ 232, 238.)  Plaintiff alleges that TRGC has been unjustly

enriched by these unlawful transfers because it has been effectively relieved of liability with

respect to the Weller and Estrada transactions.

To recover under the equitable doctrine of unjust enrichment, a plaintiff must demonstrate:  (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.  *Mitchell v. Moore*, 729 A.2d 1200, 1203-04 (Pa. Super. Ct. 1999) (citations omitted).  A plaintiff must show that "the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the providers." *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 625 (E.D. Pa. 2010) (citations omitted). Whether unjust enrichment applies "depends on the unique factual circumstances of each case." *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993).  Courts must focus "not on the intention of the parties, but rather on whether the defendant has been unjustly enriched."  *Stoeckinger v. Presidential Fin. Corp. of Del. Valley*, 948 A.2d 828, 833 (Pa. Super. Ct. 2008).  Moreover, "[p]laintiffs need not have directly dealt with each defendant in order to allege a claim of unjust enrichment against them."  *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006).

TRGC relies on the cases of *D.A. Hill Co. v. Cleveland Realty Investors*, 573 A.2d 1005 (Pa. 1990), and *Goldsmith Assocs., Inc. v. Del Frisco's of Phila., Inc.*, No. 09-1359, 2009 WL 3172752 (E.D. Pa. Oct. 1, 2009), in support of its request for dismissal.  In *D.A. Hill*, subcontractors furnished services on a construction project but were not paid for all of their work.  573 A.2d at 1006.  The subcontractors brought an unjust enrichment claim against the lending institution that foreclosed on the project after the owner defaulted.  The court denied this claim and held that "a third party is not unjustly enriched when it receives a benefit from a

16

contract between two other parties where the party benefitted has not requested the benefit or misled the other parties." *Id.* at 1010.  Similarly, in *Goldsmith*, a subcontractor, who performed work and was owed money, sought to recover not from the general contractor, but from the owner of the building.  2009 WL 3172752, at *1.  The court, applying *D.A. Hill*, rejected the subcontractor's unjust enrichment theory.  *Id.* at *5 ("[T]he controlling case of *D.A. Hill* stands for the proposition that subcontractors may not recover from owners on a theory of unjust enrichment unless (1) the owner requested the benefit or (2) the owner misled the subcontractor.").

The *D.A. Hill* rule is based on the business realities of subcontracting.  *See D.A. Hill*, 573 A.2d at 1010 ("It would be manifestly unfair for this Court to restructure these contractual arrangements in such a way as to place all of the risk on Clevetrust [the defendant lender], thus insulating the subcontractors from any responsibility for their own decisions and making Clevetrust, in effect, the insurer of the subcontractors' interests."); *Goldsmith*, 2009 WL 3172752, at *5 ("A contrary rule allowing subcontractors to recover directly from owners in other circumstances would destroy the balance of contractual relationships in the construction industry and reverse the public policy of Pennsylvania as articulated by the Supreme Court.").

TRGC argues that Plaintiff's unjust enrichment claim fails because Plaintiff does not allege that TRGC requested the benefit or misled Plaintiff in any way.  TRGC states matter-of-factly that an unjust enrichment claim brought by a third party who benefits from a contract between two other parties must allege that the defendant requested the benefit or misled the plaintiff.  This extrapolation from *D.A. Hill* and *Goldsmith* ignores the narrow context in which those cases were decided.  The rule promulgated in *D.A. Hill* has been confined to unjust

enrichment cases in the construction industry.  *See, e.g.*, *Buttonwood Co. v. E. Clifford Durell &*
*Sons, Inc.*, 34 Phila. Co. Rptr. 193, 201 (Pa. Comm. Pl. 1997) ("There is specific case law [*D.A.*
*Hill*] in this Commonwealth discussing the criteria for application of an unjust enrichment theory
in the context of claims being asserted for unpaid construction services.").

The policy undergirding the *D.A. Hill* rule accounts for the particular contractual
arrangement between contractors and subcontractors, as well as a legislative framework that
provides for mechanics' liens.  *D.A. Hill*, 573 A.2d at 1010 & n.5.  Outside the realm of the
construction industry, courts flexibly apply the unjust enrichment doctrine based on the "unique
factual circumstances of each case."  *See Kia v. Imaging Scis. Int'l, Inc.*, 735 F. Supp. 2d 256,
269 (E.D. Pa. 2010).  Plaintiff must still demonstrate that it would be unconscionable for TRGC
to retain its benefit without compensation.  *See Brown & Brown*, 745 F. Supp. 2d at 625.
However, TRGC's only argument in favor of dismissal is based on the *D.A. Hill* line of cases.
Accordingly, we reject TRGC's argument.  Plaintiff is not required to allege that TRGC misled
Plaintiff or requested its benefit.

## B.     Plaintiff's Motion for Default Judgment

On January 21, 2011, Plaintiff filed a Motion for Default Judgment against Otis Johnson,
Mabstract, Mabstract Management, John Glenn, Shannen Kurz, Michael Meehan and AMJ
Hoagie House ("Defaulting Defendants").  (ECF No. 60.)  The Defaulting Defendants were
served with a copy of the Summons and Complaint.  (ECF Nos. 8, 9, 18, 30, 41-43.)  The Clerk
of Court has entered default against these Defendants for failure to appear, plead or otherwise
defend.  On February 1, 2011, Johnson, Mabstract, and Mabstract Management submitted a
Petition to Set Aside Default.  (Pet. Set Aside, ECF No. 64.)

1.    *Johnson, Mabstract, and Mabstract Management's Petition*

Johnson, Mabstract, and Mabstract Management ("Mabstract Defendants") responded to Plaintiff's Motion for Default with a petition to set aside the entry of default under Federal Rule of Civil Procedure 60, and requested permission to file answers to Plaintiff's Complaint.[9]

Federal Rule 55(c) provides that the court may set aside an entry of default "for good cause shown." Fed. R. Civ. P. 55(c). "This requires the moving party to provide an explanation for the default or to give reasons why vacation of the default entry would serve the interests of justice." 10A Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 2696 (3d ed. 1998). Courts consider the following three factors when deciding whether to set aside an entry of default: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct." *Nyholm v. Pryce*, 259 F.R.D. 101, 103 (D.N.J. 2009) (quoting *Gold Kist, Inc., v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985)). While judgments based on default are not favored, the decision of whether to set aside an entry of default under Rule 55(c) is left to the discretion of the district court. *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir. 1984).

---

[9] The Mabstract Defendants' Petition was filed by Mabstract's insurance company's outside counsel. It seeks to have the entries of default set aside and also "requests an order vacating entries of default judgment." (Pet. Set Aside.) However, no default judgment has been entered by the Court.

Mabstract's insurance company, Max Specialty Insurance ("Max"), has filed a separate action against the Mabstract Defendants, in which it seeks declaratory relief. *Max Specialty Ins. Co. v. Mabstract LLC*, No. 11-2384 (E.D. Pa. filed Apr. 6, 2011). Upon learning of the instant action brought by Plaintiff in connection with the 818 Waverly Road transaction, Max unsuccessfully attempted to reach out to the Mabstract Defendants. *Id.* at ECF No. 1 at ¶¶ 20-26. After all of its attempts were ignored, Max hired the law offices of Sweeney & Sheehan to represent the interests of the Mabstract Defendants in this litigation. The Mabstract Defendants have also failed to answer Max's complaint in its declaratory judgment action. The Clerk of Court has entered a default in that action.

19

The Mabstract Defendants have failed to show good cause to justify setting aside the entries of default.  They offer no meritorious defense.  The Mabstract Defendants argue that they were not properly served with a copy of the Summons and Complaint.  The executed returns of service state that Johnson was served on November 3, 2010, and Mabstract and Mabstract Management were served on December 2, 2010.  (ECF Nos. 9, 41, 42.)  The Mabstract Defendants were provided with a standard summons form from this District, which listed all of the parties in the litigation.  The Summonses received by the Mabstract Defendants, however, did not separately identify their names or addresses.[10]  The Summonses did instruct the Mabstract Defendants to answer the Complaint within twenty-one days after service.  The Mabstract Defendants argue that this failure to specify their names and addresses renders service ineffective.

This argument must be rejected.  The omissions in the Summonses were technical violations that did not prejudice the Mabstract Defendants.  "The fundamental purpose for requiring proper service of process is to ensure that the defendant receives notice of the commencement of the legal action and is afforded an opportunity to present his objections." *Perlberger v. Caplan & Luber, LLP*, 152 F. Supp. 2d 650, 653 (E.D. Pa. 2001).  Although a party may not ignore the rules, when "there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process."  *Stranahan Gear Co. v. NL Indus., Inc.*, 800 F.2d 53, 56 (3d Cir. 1986) (citations omitted).  The Summonses received by the Mabstract Defendants named the court and all parties involved, listed the plaintiff's attorney

---

[10] The Summonses received by the other Defaulting Defendants suffer from the same defect.

and his address, directed Defendants to respond within twenty-one days, and was signed by the

Clerk.  The Mabstract Defendants do not argue that they did not receive the Summons and

Complaint or that they were prejudiced in any way.  The Mabstract Defendants received service,

saw the technical defects, and chose not to act.  They do not submit any affidavits that indicate

otherwise.  Plaintiffs' failure to list the Mabstract Defendants' names and addresses in a separate

box was a harmless error that did not affect the validity of service.  *See Schmoltz v. Cnty. of*

*Berks*, No. 99-1069, 2000 WL 62600, at *2 (E.D. Pa. Jan. 14, 2000).

Mabstract and Mabstract Management argue that service was improper for an additional

reason.  The server's declaration advises that he served Mabstract by serving the Summons and

Complaint upon Johnson at 411 Doylestown Road.  (ECF No. 41.)  The server's declaration

states that he served Mabstract Management by serving the Summons and Complaint upon

Johnson, "Person in Charge," at 411 Doylestown Road.  (ECF No. 42.)  Mabstract and Mabstract

Management argue that 411 Doylestown Road is the address of Defendant AMJ Hoagie House.

They contend that there is no allegation in the Complaint that Johnson was an officer, agent, or

person in charge of AMJ Hoagie House.

Defendants' arguments are without merit.  A corporation, partnership or association may

be served in the manner required by the law of the state in which the district court is located.

Fed. R. Civ. P. 4(h)(1)(a).  Pennsylvania Rule of Civil Procedure 424 provides, in relevant part,

that service upon a corporation shall be made on (1) an executive officer, partner or trustee of the

corporation, or (2) the manager, clerk or other person for the time being in charge of any regular

place of business or activity of the corporation.  The Complaint alleges that Johnson is the

president of Mabstract and that Mabstract Management is an alter ego of Johnson and Mabstract.

Mabstract and Mabstract Management do not dispute in their response that Johnson is their president.  Nor do they provide any affidavits that contest Johnson's position with respect to these two entities.[11]  The Mabstract Defendants' argument fails because under Pennsylvania Rule of Civil Procedure 424, the location of service is immaterial when serving an executive officer of a corporation.  The server's reference to "Person in Charge" does not alter this analysis.  Mabstract and Mabstract Management received proper service of this litigation and chose not to respond to the Complaint.

Plaintiff will be prejudiced if entry of default is set aside.  The Mabstract Defendants have not asserted any substantive defense in this matter, and no obvious defense exists from the face of the Complaint.  *See Duehr ex rel. Steelworkers Pension Trust v. Marriott Hotel Mgmt. Co. VI Inc.*, No. 10-4342, 2011 WL 554140, at *2 (E.D. Pa. Feb. 14, 2011) (finding that where defendant submits no responsive pleadings, court may conclude that it has no litigable defense).  The Mabstract Defendants all received a copy of the Summons and Complaint and elected to ignore this litigation.  This is culpable conduct that warrants denying the Mabstract Defendants' request to vacate the entries of default.  The Mabstract Defendants' arguments are unavailing.  They do not contest the substantive allegations of the Complaint.  They do not provide any

---

[11] "[C]ourts in this district have concluded that a return of service by a private process server creates a rebuttable presumption that proper service was effectuated."  *The Closeout Group!, Inc. v. Venator Elecs. Sales & Serv., Ltd.*, No. 07-5292, 2009 WL 2431448, at *3 (E.D. Pa. Aug. 6, 2009) (quoting *Lautman v. Loewen Grp., Inc.*, No. 99-75, 2000 WL 772818, at *10 (E.D. Pa. June 15, 2000)); *see Constitution Bank v. Painewebber Inc.*, No. 91-5175, 1992 WL 50103, at *2 (E.D. Pa. Feb. 28, 1992).  A "bare allegation by a defendant that he was improperly served cannot be allowed to belie the private process server's return."  *Closeout Group!*, 2009 WL 2431448, at *3 (quoting *FROF, Inc. v. Harris*, 695 F. Supp. 827, 829 (E.D. Pa. 1988)).  Absent corroborating evidence, a defendant's assertion, sworn or unsworn, does not defeat this presumption.  *See id.*; *Lautman*, 2000 WL 772818, at *10.

cause—let alone good cause—for their failure to respond to the Complaint.  They received actual notice of this litigation and simply ignored it.  Accordingly, we deny the Mabstract Defendants' Petition to Set Aside Default.

2.    *Plaintiff's Motion Against Defaulting Defendants*

A district court has the discretion to enter a default judgment against less than all defendants in a matter.  Fed. R. Civ. P. 54(b).[12]  A court may not enter a default judgment against one of several defendants when:  (1) the theory of recovery rests of on joint liability; or (2) the kind of relief requested is such that it must be granted against each defendant.  *See Frow v. De La Vega*, 82 U.S. 552, 554 (1872); *Farzetta v. Turner & Newall, LTD*., 797 F.2d 151, 154 (3d Cir. 1986) ("*Frow* stands for the proposition that if at trial facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff should be collaterally estopped from obtaining judgment against the latter defendant, even though it failed to participate in the proceeding in which the exculpatory facts were proved."). Thus, "[a]s a general rule then, when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted."  10A Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 2690 (3d ed. 1998); *see also Gulf*

---

[12] Rule 54(b) states in relevant part:

When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if he court expressly determines that there is no just reason for the delay.

Fed. R. Civ. P. 54(b).

*Coast Fans, Inc. v. Midwest Elecs. Imps., Inc.*, 740 F.2d 1499, 1511-12 (11th Cir. 1984)

(reversing district court's denial of defendant's Rule 55(c) motion to set aside default judgment

and noting that under *Frow*, the plaintiff in a contract case that failed to recover from one

defendant because plaintiff had breached the contract could not recover from a second defendant

who had not defended the suit).

Plaintiff brings this lawsuit against sixteen separate Defendants.  There are a total of

seven Defaulting Defendants, including Johnson, Glenn, Kurz, Mabstract, Mabstract

Management, Meehan, and AMJ Hoagie House.  Plaintiff alleges that defaulting and non-

defaulting Defendants participated in the closing of the 818 Waverly Road real estate transaction.

Plaintiff further alleges that both defaulting and non-defaulting Defendants committed fraud,

misrepresentation, conversion and conspiracy against Plaintiff.  As a result, there is a danger of

logically inconsistent determinations as to liability of the non-defaulting defendants on the one

hand, and defaulting defendants on the other hand.  The liability of one of the Defaulting

Defendants cannot be adjudicated without affecting the rights of other non-defaulting defendants.

Moreover, numerous counts of the Complaint request that judgment be entered against both

defaulting defendants and non-defaulting defendants in the amount $480,000 plus interests, costs

and additional amounts for punitive damages.  (*See* Compl. 27-29, 32.)  Plaintiff appears to be

asserting that these defaulting and non-defaulting defendants are jointly liable for Plaintiff's

alleged damages.  Entering default judgment against some, but not all, of the jointly liable

Defendants is not appropriate at this time.  *See Farzetta*, 797 F.2d at 154; *see also Koren v. First*

*Funding Factors, Inc.*, No. 89-6250, 1990 U.S. Dist. LEXIS 8886, at *8 (E.D. Pa. July 13, 1990)

("[W]hen one of several defendants who is alleged to be jointly liable defaults, judgment should

not be entered against him until the matter has been adjudicated with regard to all defendants.")

We are satisfied that there is just reason to delay entering default judgment against the Defaulting Defendants.  Accordingly, Plaintiff's Motion for Default Judgment is denied without prejudice.  Plaintiff may later request default judgment against the Defaulting Defendants after the matter has been adjudicated with regard to all Defendants.

## IV.      CONCLUSION

For the foregoing reasons, Defendant Title Resources Guaranty Company's Motion to Dismiss will be granted in part and denied in part, Plaintiff Stout Street Funding's Motion for Default Judgment will be denied, and Defendants Otis Johnson, Mabstract, and Mabstract Management's Petition to Set Aside Entry of Default and Seeking Leave to File Answer will be denied.

An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**

25